# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of James L. Bell, Respondent.

Appellate Case No. 2017-001908

Opinion No. 27755
Submitted December 1, 2017 - Filed December 20, 2017

## DEFINITE SUSPENSION

Lesley M. Coggiola, Disciplinary Counsel, and Sabrina C. Todd, Senior Assistant Disciplinary Counsel, of Columbia, for Office of Disciplinary Counsel.

James L. Bell, of Charleston, pro se.

**PER CURIAM:** In this attorney disciplinary matter, the Office of Disciplinary Counsel (ODC) and Respondent have entered into an Agreement for Discipline by Consent (Agreement) pursuant to Rule 21 of the Rules for Lawyer Disciplinary Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court Rules (SCACR). In the Agreement, Respondent admits misconduct and consents to the imposition of a definite suspension for no more than nine (9) months. Respondent requests that any suspension be made retroactive to November 18, 2016, the date of his interim suspension. We accept the Agreement and impose a definite suspension of nine (9) months from the practice of law. We grant Respondent's request to make his suspension retroactive to the date of his interim suspension.

## Facts and Law

Respondent was hired to negotiate the purchase of an oil rig in Oklahoma by NTB Management Planning and Control, LTD (NTB), an Israeli company. The fee agreement between Respondent and NTB provided for a retainer of $21,000 plus hourly fees; however, Respondent never received the retainer. Instead, NTB

advised Respondent that insurance proceeds due to NTB would be wired to his account to be disbursed for expenses related to the purchase of the oil rig as instructed. A wire of $48,600 from Liberty Company Insurance Brokers (Liberty) soon arrived in Respondent's trust account at Wells Fargo Bank (WF Trust Account), which prior to the wire had a balance of $2.43. NTB's USA director, Roland Nelson, asked Respondent to give him cash from these funds to pay NTB's expenses. Pursuant to Nelson's instructions, Respondent paid two of NTB's third-party vendors. He withdrew cash in the amount of $6,600 to purchase a cashier's check made payable to the first vendor. He deposited the cashier's check into an account which Nelson identified as the vendor's account. On the same day, Respondent withdrew $8,000 in cash from his WF trust account. After Respondent gave Nelson $500 of this amount for his hotel bill, Respondent deposited the remaining $7,500 into his trust account at Bank of America (BOA Trust Account) and then transferred the funds to the second vendor's account. Respondent then paid himself a total of $8,500 in fees by way of two online transfers from his WF Trust Account, one to his operating account and another to his personal joint checking account.

During an angry telephone call, Nelson claimed one or both of NTB's third-party vendors had not been paid and threatened to cut Respondent's throat. Desiring to terminate his relationship with NTB, Respondent decided to withdraw the balance from his WF Trust Account. Respondent forgot to account for the transfers he made for his fees equal to $8,500, so he believed the balance in the WF trust account was higher than it actually was. He signed a cash withdrawal slip for $33,987.43 to purchase a cashier's check made payable to his firm and deposited the check into his BOA Trust Account. Once these transactions were processed, Respondent's WF Trust Account was overdrawn by $8,485.

Although NTB is a legitimate company, the purchase of the oil rig was a fraudulent transaction. The wire from Liberty into Respondent's WF Trust Account was initiated by an email scam perpetrated on NTB. When Wells Fargo contacted Respondent about the overdraft and the fraudulent wire, Respondent agreed to return $33,987.43 to his WF Trust Account and authorized the return of the account balance equal to $25,467.43 to Liberty. He elected to retain the $8,500 in fees he paid to himself, claiming he failed to understand from his conversation with Wells Fargo that the funds belonged to Liberty. He admits he did not ask enough questions to learn what actually happened.

Respondent only responded to the notice of investigation and a request for additional information from ODC after receiving reminder letters. Respondent

initially explained the overdraft to ODC by claiming he accidentally transposed numbers while in a hurry, the error was caught immediately, and the funds were promptly returned to the account. However, the bank statement from his WF Trust Account revealed this was not the case.

Respondent admits his conduct violated Rule (2)(c) (cash withdrawals from client trust accounts are prohibited) and Rule 6 (no item shall be drawn on a trust account made payable to cash) of the Financial Recordkeeping Rules found in Rule 417, SCACR. Furthermore, he admits his conduct violated Rule 8.1(b) (a lawyer in connection with a disciplinary matter shall not fail to respond to a lawful demand for information from a disciplinary authority) and Rule 8.4(e) (it is professional misconduct to engage in conduct that is prejudicial to the administration of justice) of the Rules of Professional Conduct, Rule 407, SCACR.

## Conclusion

We accept the Agreement for Discipline by Consent and suspend Respondent from the practice of law for nine (9) months, retroactive to November 18, 2016, the date of his interim suspension.

Prior to filing any petition for reinstatement, Respondent shall complete the Legal Ethics and Practice Program (LEAPP) Ethics School as provided by Rule 33, RLDE, Rule 413, SCACR. Additionally, Respondent shall complete the LEAPP Trust Account School and Law Office Management School within one year of being reinstated to the practice of law.

Within thirty (30) days of the date of this order, Respondent shall pay the costs incurred in the investigation and prosecution of this matter by ODC and the Commission on Lawyer Conduct.

Within fifteen days of the date of this opinion, Respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30, RLDE, Rule 413, SCACR.

**DEFINITE SUSPENSION.**

**BEATTY, C.J., KITTREDGE, HEARN, FEW and JAMES, JJ., concur.**